United States District Court
Southern District of Texas
**ENTERED**
May 18, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ROSEMARIE PENA, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:19-CV-235 |
| | § | |
| ANDREW SAUL, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Rosemarie Pena brought this action on August 16, 2019, seeking review of the Commissioner's final decision determining she was not disabled. (D.E. 1). On March 2, 2020, Plaintiff filed a Motion for Summary Judgment. (D.E. 8). On April 10, 2020, Defendant filed a Responsive Brief. (D.E. 9). For the reasons that follow, it is respectfully recommended that Plaintiff's Motion for Summary Judgment be **DENIED**, the Commissioner's determination be **AFFIRMED** and Plaintiff's cause of action be **DISMISSED**.

## I.    JURISDICTION

The Court has jurisdiction over the subject matter and the parties pursuant to 42 U.S.C. § 405(g).

## II.     BACKGROUND

Plaintiff protectively filed an application for disability benefits on May 16, 2016, alleging disability as of August 12, 2016,[1] due to a benign brain tumor; scoliosis; diabetes; arthritis in her hips, legs and lower back; high blood pressure; high cholesterol; and being hard of hearing in her right ear.  (D.E. 6-3, Pages 11 and 61; D.E. 6-4, Pages 2-3 and 14; D.E. 6-6, Pages 12-18 and D.E. 6-7, Page 30).  Plaintiff's application was denied upon initial consideration and again upon reconsideration.  (D.E. 6-4).  At Plaintiff's request, a hearing was held before an administrative law judge ("ALJ") on January 9, 2018 at which Plaintiff, who was represented by her current counsel, and a vocational expert ("VE") testified.  (D.E. 6-3, Pages 31-62).

The ALJ, Susan Whittington, issued an unfavorable decision on August 10, 2018, finding Plaintiff not disabled between August 12, 2016, the amended alleged onset date, through the date of the decision.  (D.E. 6-3, Page 24).  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since August 12, 2016.  (D.E. 6-3, Page 13).  At step two, the ALJ determined Plaintiff had the following severe impairments:  stable right cerebellopontine angle mass of the brain; history of right acoustic neuroma; headaches; type II diabetes mellitus; mild to moderate peripheral vascular disease; and left supraspinatus tear of her shoulder.  (D.E. 6-3, Page 13).  The ALJ also found the following non-severe impairments:  obesity, hepatic steatosis; small hiatal hernia; minimal scoliosis and mild degenerative changes of the lumbar spine;

---

[1]Plaintiff initially alleged an onset date of March 28, 2016.  (D.E. 6-3, Page 11 and D.E. 6-4, Page 3).  However, she amended her alleged onset date at the January 9, 2018 hearing held before the Administrative Law Judge ("ALJ") to August 12, 2016, her 50th birthday.  (D.E. 6-3, Page 61).

allergic rhinitis; gastroesophageal reflux disease; and essential hypertension.  (D.E. 6-2, Page 14).  At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (D.E. 6-3, Page 15).  The ALJ also determined Plaintiff had the residual functional capacity ("RFC") to perform a modified range of light work.  (D.E. 6-3, Pages 16-17).  At step four, the ALJ found Plaintiff could perform her past relevant work as an accounts receivable clerk as it did not require the performance of work-related activities precluded by her RFC.  (D.E. 6-3, Page 22).  Therefore, the ALJ concluded Plaintiff was not disabled from August 12, 2016 through the date of her decision.  (D.E. 6-3, Page 24).

Plaintiff requested the Appeals Council ("AC") review this decision, and the AC denied her request for review on July 23, 2019, making the August 10, 2018 determination the final decision of the Commissioner under 42 U.S.C. § 405(g).  (D.E. 6-3, Pages 2-4 and 11-25).  Plaintiff timely filed this action on August 16, 2019, seeking a review of the Commissioner's final decision.  (D.E. 1).

## III.    SUMMARY OF THE EVIDENCE[2]

Plaintiff, at the time of her alleged disability onset date, was a 50-year-old[3] woman with a high school degree and past relevant work as a bookkeeper/accounts receivable clerk and a fast food general manager.  (D.E. 6-3, Pages 38, 40, 53, and 60-61 and D.E.

---

[2]The undersigned has thoroughly reviewed all the records in this case, even if not specifically addressed in this M&R.

[3]A claimant can be classified in one of three age categories: (1) a younger person (18-49); (2) a person closely approaching advanced age (50-54); or (3) a person of advanced age (55 or older).  20 C.F.R. § 404.1563(c)-(e).

6-7, Pages 6-13).  Plaintiff reported she stopped working in April or May of 2016.  (D.E. 6-3, Page 38).

Plaintiff injured her left shoulder and arm on November 28, 2013 when she attempted to remove a box from a freezer at work.  (D.E. 6-12, Page 19).  She was excused from a full range of work until December 19, 2013 when she was released to work with modified restrictions, although she still reported pain in her left shoulder which was attributed to a shoulder strain.  (D.E. 6-12, Pages 6-7).  On May 6, 2014, after physical therapy, medication and injections were unsuccessful, Plaintiff had surgery on her left shoulder to repair a rotator cuff partial tear.  (D.E. 6-3, Page 41; D.E. 6-13, Pages 4-5, 7, 14, 32 and 37; and D.E. 6-14, Page 75).

On June 26, 2014, Plaintiff was treated in the emergency room of Christus Spohn Hospital South ("Christus Spohn").  (D.E. 6-9, Page 7).  The chief complaint was a right earache with mild pain.  (D.E. 6-9, Page 7).  Plaintiff was diagnosed with swimmer's ear and given ear drops.  (D.E. 6-9, Page 8).  In July 2014, a benign brain mass was discovered which was treated with radiation.  (D.E. 6-14, Page 75).

On September 5, 11 and 14, 2014, Plaintiff was treated at Concentra Medical Center and reported that her left shoulder had no pain.  (D.E. 6-14, Page 112 and D.E. 6-15, Pages 2 and 6).  Plaintiff is noted as having "made excellent progress with her ROM and strength since last measured."  (D.E. 6-15, Pages 4 and 8).  On September 16, 2014, Plaintiff reported her left shoulder felt good and she was about 90% back to normal.  (D.E. 6-15, Page 9).  Plaintiff was found to have "achieve[d] all function goals" and was permitted to return to work without restrictions.  (D.E. 6-15, Pages 11-12).

On November 13, 2014, Plaintiff was treated at Christus Spohn for severe lower back pain radiating down both legs with a sudden onset making her unable to walk. (D.E. 6-9, Page 31).  Plaintiff was discharged within a few hours and the attending physician noted Plaintiff's pain had been relieved and she was able to ambulate.  (D.E. 6-9, Page 32).

A December 29, 2014 head MRI noted Plaintiff's brain mass involving the right internal auditory canal was not significantly different in size when compared to the previous July 10, 2014 MRI.  (D.E. 6-8, Page 49).

An April 9, 2015 report from Christus Spohn Hospital-Memorial ("Christus Memorial") shows Plaintiff reported a cough but a scan of her chest showed no acute pneumonic finding with no change when compared to a previous scan of March 17, 2014. (D.E. 6-10, Page 43).

Plaintiff was treated at the South Texas Brain and Spine Center by Dr. Michael Alexander on March 12, 2015 for a follow up related to her benign brain tumor.  Plaintiff complained of right-sided headaches with accompanying dizziness and nausea with over the counter medications providing no relief.  (D.E. 6-8, Page 18).  Plaintiff is noted as well- nourished and developed and using no assistive devices.  (D.E. 6-8, Pages 19-20). She is further noted as having normal memory, normal muscle strength and tone, normal gait with no unsteadiness, normal posture, and normal language and speech.  (D.E. 6-8, Page 21).  Plaintiff's March 9, 2015 head MRI was reviewed and showed a mass which was "essentially unchanged from [the] previous exam on 12/29/14," had a decrease in swelling and appears "stable and unchanged."  (D.E. 6-8, Pages 21 and 51).  Plaintiff was

prescribed medication for headaches and was told to follow up in three months.  (D.E. 6-8, Page 21).

On May 1, 2015, Plaintiff was treated Christus Memorial.  (D.E. 6-10, Page 42). A May 1, 2015 head CT of Plaintiff's brain mass showed it was "relatively unchanged" from the last scan on December 14, 2014.  (D.E. 6-10, Page 42).

On June 25, 2015, Plaintiff was again treated by Dr. Alexander at South Texas Brain and Spine Center.  She reported no headaches or dizziness but reported she was having issues with balance.  (D.E. 6-8, Page 23).  Plaintiff also reported taking medication for diabetes, hypertension, and hypocholesteremia.  (D.E. 6-8, Page 24).  She is again noted as having normal memory, normal muscle strength and tone, normal gait with no unsteadiness, normal posture, and normal language and speech.  (D.E. 6-8, Pages 24-25).  Plaintiff's head MRI showed a decrease in swelling but the size of the mass had increased slightly since the March 9, 2015 MRI.  (D.E. 6-8, Pages 21 and 53-54).  The overall impression was a "[l]arge heterogeneously enhancing mass involving right internal auditory canal and causing significant compression of the adjacent brain."  (D.E. 6-8, Page 54).  Plaintiff's prescribed medication for headaches was refilled, and she was again told to follow up in three months.  (D.E. 6-8, Pages 21).

Plaintiff was treated by Dr. Thomas Chodosh on July 15, 2015, for diabetes care and also complained of mouth numbness.  (D.E. 6-10, Page 17).  Plaintiff further reported weakness, fatigue, numbness/tingling and excessive thirst and frequent urination.  (D.E. 6-10, Page 18).  Plaintiff's diabetes medication was changed and her hypertension is noted as controlled.  (D.E. 6-10, Page 17).

On July 28, 2015, Plaintiff was treated at South Texas ENT and allergy.  (D.E. 6-8, Page 7).  Plaintiff reported occasional drainage, pain and loss of hearing in her right ear with ringing and a feeling of fullness.  (D.E. 6-8, Pages 7-8).  Plaintiff is noted as healthy appearing, well-nourished and well-groomed and reported no anxiety, muscle aches or joint pain.  (D.E. 6-8, Page 9).  Plaintiff was assessed as having asymmetrical and unilateral hearing loss as well as balance impairment with dizziness and an unspecified brain tumor.  (D.E. 6-8, Page 9).  Plaintiff is noted as having normal hearing in her left ear and moderate to severe hearing loss in her right ear which was worsening. (D.E. 6-8, Page 11).

Plaintiff was treated at Christus Memorial on August 28, 2015, for complaints of chest pain.  (D.E. 6-10, Page 41).  Dr. Thomas Ertzner noted Plaintiff had no acute cardiopulmonary disease and there was no change in appearance of the heart and lung fields compared to the April 9, 2015 exam.  (D.E. 6-10, Page 41).

Plaintiff was treated by PA Anthony Herd at Dr. Chodosh's office on September 9, 2015.  (D.E. 6-10, Page 15).  Plaintiff reported numbness to the right side of her face, leg pain, fatigue, blurred vision, swelling of the feet and ankles, pain, motion difficulty, dizziness, poor balance, limb weakness and excessive thirst and urination.  (D.E. 6-10, Page 15 and 16).  Plaintiff's diabetes and hypertension are noted as controlled and Plaintiff was told to continue treatment with Dr. Alexander and scheduled for a follow up.  (D.E. 6-10, Page 15).

On October 5, 2015, Plaintiff was again treated by Dr. Alexander at South Texas Brain and Spine Center.  Plaintiff reported right facial numbness and weakness as well as

bilateral thigh pain for the past five to six months.  (D.E. 6-8, Page 28).  Plaintiff reported

having no back pain but she was using a cane to ambulate. (D.E. 6-8, Pages 28 and 79).

She also reported having headaches, dizziness, blurred vision and double vision for the

past five months as well as neck, shoulder, arm and leg pain.  (D.E. 6-8, Pages 28 and

77).  Plaintiff further reported her pain medication, Tylenol 4, provided complete pain

relief and her pain worsened with walking or bending but not standing, sitting or laying.

(D.E. 6-8, Pages 77 and 79).   Plaintiff is again noted as well-developed and well-

nourished with strength in her lower and upper extremities as five out of five.  (D.E. 6-8,

Page 30).  Dr. Alexander noted a September 21, 2015 head MRI showed a stable right

acoustic neuroma and paresthesias (tingling or pricking sensation).  (D.E. 6-8, Pages 31

and 55-56).  The head MRI showed "at least some improvement in mass effect with less

compression of the fourth ventricle."  (D.E. 6-8, Page 56).  Dr. Alexander then ordered an

MRI of her brain stem and lumbar spine, prescribed Lyrica and ordered a three month

follow up.  (D.E. 6-8, Page 31).

On October 12, 2015, Plaintiff was treated at Cardiology Associates of Corpus

Christi by Dr. Zoltan Toth for complaints of cardiac arrythmia as well as leg pain and

swelling.  (D.E. 6-10, Page 37).  Plaintiff reported aching in both legs for the past month

exacerbated by walking.  (D.E. 6-10, Page 37).  Plaintiff further reported she was able to

exercise but also that she walks with a limp and pain.  (D.E. 6-10, Page 39).  Noting that

Plaintiff's symptoms were typical for angina, Dr. Toth ordered a stress test and

echocardiogram.  (D.E. 6-10, Pages 39-40).

Plaintiff was treated by PA Anthony Herd at Dr. Chodosh's office on November 18, 2015.  (D.E. 6-10, Page 13).  Plaintiff reported pain in both hips radiating down to her thighs which had become progressively worse since July.  Plaintiff also reported fatigue, blurred vision, pain, headaches, dizziness, poor balance, and excessive thirst.  (D.E. 6-10, Page 14).  Plaintiff is noted as having "mild distress with ambulation only" and "normal strength and range of motion of the lower extremities."  (D.E. 6-10, Page 13).  Plaintiff's bursitis was treated and she was scheduled for a follow up visit. (D.E. 6-10, Page 13). Also on November 18, 2015, Plaintiff was treated at Cardiology Associates of Corpus Christi for chest pain, palpitations and dizziness.  (D.E. 6-10, Page 30).  Dr. Toth opined Plaintiff's symptoms were typical for angina and there was no evidence of significant structural heart disease and, as November 4, 2015 tests showed no significant ischemia, no further cardiac evaluation was needed.  (D.E. 6-10, Pages 34 and 36).  Dr. Toth added a beta blocker to Plaintiff's prescriptions and ordered her to exercise, including strength training, and to return in one year.  (D.E. 6-10, Page 34).

On November 24, 2015, Plaintiff was treated at Christus Spohn with a chief complaint of left forearm and wrist moderate pain with mild tenderness. (D.E. 6-9, Page 40).  After x-rays were taken, Plaintiff's left wrist was found to be sprained, her forearm strained, and she was placed in a Velcro splint.  (D.E. 6-9, Pages 41-42).  Plaintiff is noted as having no other complaints and a normal, painless range of motion in both the neck and back.  (D.E. 6-9, Page 41).

Plaintiff was again treated by Dr. Alexander at the South Texas Brain and Spine Center on January 14, 2016.  Plaintiff is noted as "doing well since her last visit" but also

reported constant right facial numbness and weakness.  (D.E. 6-8, Page 33).  Plaintiff further reported occasional and transient lower back pain with bilateral thigh pain and nerve pain.  Plaintiff is noted as using a cane to ambulate because of gait instability. Plaintiff further complained of headaches, dizziness, and deafness in her right ear without ringing.  (D.E. 6-8, Page 34).  Plaintiff is again noted as well-developed and well-nourished with strength in her lower and upper extremities as five out of five.  (D.E. 6-8, Page 36).  A January 12, 2016 brain MRI showed no interval change in the tumor.  (D.E. 6-8, Pages 57-58).  A January 12, 2016 lumbar spine MRI showed mild disc bulges at L4/L5 and L5/S1 without central canal stenosis.  (D.E. 6-8, Page 36).  Dr. Alexander determined Plaintiff had bursitis in her right foot as well as facial numbness and paresthesias.  (D.E. 6-8, Pages 36 and 63).  Dr. Alexander recommended "conservative measures" for treatment of Plaintiff's lumbar spine, referring her for physical therapy and pain management including injections with Dr. Li-Herng Lui.  Plaintiff was also referred to Dr. Tucker for bursitis injections if needed and was scheduled for a three month follow up.  (D.E. 6-8, Pages 36-37).

On January 25, 2016, Plaintiff was first treated by Dr. Lui.  (D.E. 6-8, Page 74). Plaintiff reported her pain level was 10/10, constant, increased with walking or standing, decreased with medication and caused sleep difficulties.  (D.E. 6-8, Page 74).  Plaintiff is noted as being able to ambulate with the assistance of a cane.  (D.E. 6-8, Page 75).  Dr. Liu assessed Plaintiff as having chronic low back pain, lumbar radiculopathy and spondylosis, degeneration of the lumbar intervertebral disc and peripheral neuropathy for which he prescribed Tramadol and epidural steroid injections.  (D.E. 6-8, Pages 75-76).

He noted physical therapy should be considered after the injections and surgery should only be considered as a last option if the injections and more conservative treatments failed.  (D.E. 6-8, Page 76).  Plaintiff received injections on February 10, 2016 and April 5, 2016.  (D.E. 6-8, Pages 96 and 100-105).

On March 8, 2016, Plaintiff was again treated by Dr. Chodosh, complaining of a headache causing blurred vision and nausea with a pain level of 8/10.  (D.E. 6-10, Page 11).  Plaintiff continued to report fatigue, blurred vision, pain, motion difficulty, headaches, dizziness, poor balance and excessive thirst and urination.  (D.E. 6-10, Page 12).  Plaintiff's diabetes and hypertension were noted as well controlled with current medication and Plaintiff was referred to Dr. Alexander for reevaluation and treatment of her headache.  (D.E. 6-10, Page 11).

On March 10, 2016, Plaintiff was again seen by Dr. Alexander at South Texas Brain and Spine Center.  Plaintiff reported a recent increase in headaches and dizziness which affected her ability to function at work.  (D.E. 6-8, Pages 38-39).  Plaintiff reported she had been treated by Dr. Liu and had received epidural steroid injections in her lumbar spine, which had improved her pain level but that Tramadol provide little relief.  (D.E. 6-8, Page 38).  Plaintiff reported she "is hopeful to obtain disability because she was recently denied."  (D.E. 6-8, Page 38).  It is noted that, "Today, she is ambulating independently without any supportive devices."  (D.E. 6-8, Page 38).  Plaintiff is noted as having a normal gait, no unsteadiness and normal strength and tone.  (D.E. 6-8, Page 41).  A March 8, 2016 head MRI showed no interval change in the mass.  (D.E. 6-8, Pages 59-60).  A March 8, 2016 lumbar x-ray showed mild degenerative changes at L5/S1 without

acute fracture or subluxation.  (D.E. 6-8, Page 65).   Plaintiff was scheduled for a three month follow up and told to continue treatment with Dr. Liu, including physical therapy and injections.  (D.E. 6-8, Page 42).

On March 22, 2016, Plaintiff was treated at Christus Spohn for chest pain with nausea, shortness of breath and anxiety.  (D.E. 6-9, Page 45).  Radiology reports noted clear lungs, a normal heart and an overall normal examination of the chest.  (D.E. 6-9, Pages 45, 53 and 56).  Plaintiff was found to have anxiety and was prescribed medication to take as needed.

On March 24, 2016, Plaintiff received an initial evaluation at Humpal Physical Therapy & Sport Medicine Center.  (D.E. 6-8, Page 83).  Plaintiff's chief complaint was noted as lower back pain aggravated by prolonged sitting, squatting and lifting.  (D.E. 6-8, Page 83).  Plaintiff reported difficulty ambulating after prolonged sitting.  (D.E. 6-8, Page 83).  It was recommended Plaintiff attend three physical therapy sessions a week for a six- week period.  (D.E. 6-8, Page 83).

On March 30, 2016, Plaintiff was treated by Dr. Chodosh.  (D.E. 6-10, Page 9). Plaintiff reported lower back pain radiating to both of her legs as well as fatigue, blurred vision, shortness of breath, pain, stiffness, headaches, poor balance, excessive urination and dizziness.  (D.E. 6-10, Pages 9 and 10).  Plaintiff's blood sugars are noted as within normal limits and her "blood pressure is well controlled on medication."  (D.E. 6-10, Page 9).  Plaintiff was advised to apply for family medical leave because her current "job description does not really lend itself to her problems."  (D.E. 6-10, Page 9).  Plaintiff is noted as alert, ambulatory and oriented but walking "with a guarded gait and cautious

stature." (D.E. 6-10, Page 9).  Plaintiff's medications were continued and she was told to continue physical therapy, chronic pain management and treatment by her specialists. (D.E. 6-10, Page 9).

On April 27, 2016, Plaintiff was treated by Dr. Chodosh.  (D.E. 6-10, Page 7). Plaintiff reported no improvement in her symptoms, continuing to report nausea, malaise, fatigue and decreased appetite.  (D.E. 6-10, Page 7).  Plaintiff also reported she received epidural steroid injections which did not help her lower back as she cannot stand or sit for prolonged periods and cannot repetitively bend, kneel, squat, climb, lift or carry.  (D.E. 6-10, Page 7).  Plaintiff's hypertension was noted as "well controlled on medication" and her blood sugars were within normal limits.  (D.E. 6-10, Page 7).  Plaintiff was noted as "using a cane to help ambulate and steady her balance."  (D.E. 6-10, Page 7).  Plaintiff was told to continue her current medications, continue physical therapy, avoid physical activities and scheduled for a follow up appointment.  (D.E. 6-10, Page 7).

In April or May 2016, Plaintiff stopped working.  (D.E. 6-3, Pages 38-39). Plaintiff protectively filed an application for disability benefits on May 16, 2016, alleging disability due to a benign brain tumor; scoliosis; diabetes; arthritis in her hips, legs and lower back; high blood pressure; high cholesterol; and being hard of hearing in her right ear.  (D.E. 6-3, Pages 11 and 61; D.E. 6-4, Pages 2-3 and 14; D.E. 6-6, Pages 12-18 and D.E. 6-7, Page 30).  In a June 6, 2016 Function Report, Plaintiff reported her benign brain tumor caused her to have dizziness, loss of balance as well as memory and concentration issues and scoliosis affected her ability to lift, walk and sit without pain.  (D.E. 6-7, Pages 18 and 23).  Plaintiff reported her daily activities as trying to clean the house and

exercise, taking care of her grandson by feeding him and washing his clothes, preparing food twice daily while sitting and standing for 30 minutes, driving to stores for food and clothes twice a week for 30 minutes to an hour and managing her money without assistance.  (D.E. 6-7, Pages 19-22).  Plaintiff further reported she could dress, bathe and feed herself without assistance but needed help remembering if she took her medication.  (D.E. 6-7, Pages 19-20).   Plaintiff also reported she often used a cane but it was not prescribed and also that her medications caused dizziness, blurred vision, drowsiness and an increased need to use the bathroom.  (D.E. 6-7, Pages 24-25).  A disability field report completed after a face to face interview with Plaintiff noted Plaintiff walked with a limp.  (D.E. 6-7, Pages 26-28).

Plaintiff's physical therapy treatment notes from June 7, 2016 indicate Plaintiff "is able to ambulate without cane assist more often now."  (D.E. 6-8, Page 80).  Plaintiff reported she had significant lower back pain on the left greater than the right with radiating symptoms into her legs made worse within 10 to 15 minutes of weight bearing and sitting activity.  (D.E. 6-8, Page 80).  Plaintiff, after 12 physical therapy sessions, was found to have demonstrated minimal improvement in her pain level with functional activity and was assessed as having reached her maximum physical therapy relief.  (D.E. 6-8, Page 81).  It was recommended Plaintiff return to her medical provider for treatment.  (D.E. 6-8, Page 81).

On June 8, 2016, Plaintiff was treated by Dr. Chodosh for reevaluation of her hypertension and diabetes.  (D.E. 6-10, Page 5).  Plaintiff reported she finished her physical therapy sessions and was still in pain.  (D.E. 6-10, Page 5).  Plaintiff reported

she could only walk a short distance without back pain, was unable to sit, stand or ambulate without back discomfort and had to slowly get out of any seated position. (D.E. 6-10, Page 6). Plaintiff also reported she failed to take insulin for her diabetes for two days because was out. (D.E. 6-10, Pages 5 and 6). Plaintiff also reported fatigue, blurred vision, ringing ears, shortness of breath, nausea, pain, headaches, poor balance, limb weakness, excessive thirst and urination and dry skin. (D.E. 6-10, Page 6). Dr. Chodosh noted Plaintiff's blood pressure was "well controlled on medication" and Plaintiff was "stable at this time." (D.E. 6-10, Page 6). Plaintiff was told to avoid any lifting, pushing, pulling, crawling, kneeling, bending, stooping, climbing, or carrying objects more than ten pounds. (D.E. 6-10, Page 6). She was also told to stretch and be off her feet as much as possible and to use a lumbosacral belt support for stability and balance. (D.E. 6-10, Page 6). Plaintiff's medications were continued and she was scheduled for a follow up in three months. (D.E. 6-10, Page 5).

On June 16, 2016, Plaintiff was again treated by Dr. Alexander at South Texas Brain and Spine Center. Plaintiff complained of constant lower back pain radiating to her thighs and legs, on the left greater than the right but that Tramadol provided complete relief for her pain. (D.E. 6-8, Pages 43 and 67-71). Plaintiff reported the epidural steroid injections she received from Dr. Lui relieved her pain for three weeks and "physical therapy only helped with being able to ambulate without a cane but did not alleviate any pain." (D.E. 6-8, Page 43). Plaintiff continued to complain of right facial numbness and paresthesias. Plaintiff is noted as well-developed and well-nourished, using no assistive devices and having normal strength and gait. (D.E. 6-8, Pages 45 and 47). A June 8,

2016 brain MRI showed Plaintiff's tumor had similar size measurements as her previous brain MRI with significant compression on the right side but it did "not appear significantly changed from March 8, 2016."  (D.E. 6-8, Pages 47 and 61-62).   Lumbar x-rays taken on June 16, 2016 showed no acute bony abnormality, mild scoliosis and spondylosis of the lumbar spine, mild facet disease at L4/L5 and L5/S1 levels with "no evidence for instability seen."  (D.E. 6-8, Pages 47 and 66).  Plaintiff was told to continue her treatment with Dr. Lui with "surgery [being] a last resort for her relatively mild degenerative disease."  (D.E. 6-8, Page 47).  Plaintiff declined further physical therapy because she felt the previous sessions were not beneficial and she was scheduled for a six month follow up.

Plaintiff was treated by Dr. Rudy Garza at Corpus Christi Pain Medicine on July 18, 2016, for a follow up after receiving injections on February 10, 2016 and April 5, 2016 from Dr. Liu.  (D.E. 6-8, Page 96).  Plaintiff report she received 50% pain relief for about three weeks after the injections.  (D.E. 6-8, Page 96).  Plaintiff was advised to continue taking Lyrica and Tramadol.  (D.E. 6-8, Page 98).

On July 31, 2016, Plaintiff was treated at Christus Spohn for an earache in her right ear with moderate pain.  (D.E. 6-9, Page 63).  A CT scan was performed, again noting the benign mass at the level of the right internal auditory canal which was unchanged from the previous exam.  (D.E. 6-9, Page 65).  Plaintiff was to follow up with her treating physician for treatment.

The next day, on August 1, 2016, Plaintiff was again treated by Dr. Alexander at South Texas Brain and Spine Center.   (D.E. 6-9, Page 72).   Plaintiff continued to

complain of a right earache with symptoms that started two days prior.  (D.E. 6-9, Page 72).  Plaintiff is noted as "currently ambulating independently without any supportive devices."  (D.E. 6-9, Page 72).  Plaintiff was treated with medication, including ear drops, and a follow up visit was recommended for six months.  (D.E. 6-9, Pages 75-76).

On August 2, 2016, Plaintiff's application for disability benefits was denied. (D.E. 6-4, Page 11).  The decision states that while Plaintiff had some limitations from her listed ailments, her daily activities were not significantly affected and her ability to perform basic work activities was not as limited as Plaintiff indicated making it possible for her to adjust to other work.  (D.E. 6-4, Page 12).  Plaintiff requested reconsideration of this initial determination on September 2, 2016.  (D.E. 6-5, Page 6).  In an appeals disability report dated September 7, 2016, Plaintiff reported she had more anxiety and an increased brain mass and had the following new conditions:  arthritis in her elbows and bottom of feet, left shoulder reconstruction, obesity, memory loss and a heart murmur. (D.E. 6-7, Page 42).  Plaintiff's present attorney, Mark Di Carlo, was appointed by Plaintiff as her representative on September 8, 2016.  (D.E. 6-5, Page 7).

In an October 3, 2016 Function Report, Plaintiff reported she had pain when sitting or standing for long periods as well as trouble walking and lifting and a loss of balance and hearing.  (D.E. 6-7, Page 50-51).  Plaintiff continued to report she could dress, bathe and feed herself without assistance but with more difficulty than her last report in June 2016.  Plaintiff continued to report that she prepared her own meals and took care of her grandson.  (D.E. 6-7, Pages 52-53).  Plaintiff reported she no longer drove but continued to shop for clothes and food twice a week for an hour to 1 ½ hours at

a time with the use of a motorized scooter and attended school events twice a month. (D.E. 6-7, Pages 53-54 and 56).  Plaintiff further noted a loss of strength and constant pain accompanying physical movement as well as memory, concentration and hearing issues.  (D.E. 6-7, Page 55).  She also continued to report her medications causes dizziness, drowsiness, nausea and diarrhea.  (D.E. 6-7, Page 56).  Plaintiff further reported she could walk for two or three minutes before needing to rest for 30 minutes. (D.E. 6-7, Page 56).

On November 15, 2016, Plaintiff's disability application was denied upon reconsideration.  (D.E. 6-4, Page 25).  It was determined that Plaintiff's ailments were not severe enough to keep her from working and while there was not sufficient vocational information to determine whether she could perform her past relevant work, she could adjust to other work.  (D.E. 6-4, Page 26).

On December 29, 2016, Dr. Alexander submitted a letter to certify that Plaintiff was under doctor's care.  (D.E. 6-15, Page 21).  He opined Plaintiff had "lower back pain secondary to L5/S1 degenerative disc disease and with stable right acoustic neuroma that has chronic back pain and imbalance."  (D.E. 6-15, Page 21).  He noted Plaintiff had mild degenerative changes at L5/S1.  (D.E. 6-15, Page 21).  He also stated he did not recommend surgical intervention.  (D.E. 6-15, Page 21).  Dr. Alexander also reported Plaintiff had "been using a cane for ambulation since March and has been unable to work with her worsening balance and back pain."  (D.E. 6-15, Page 21).

On January 6, 2017, Plaintiff requested a hearing by an AJL and on January 9, 2017, Plaintiff completed a disability appeals report, stating she was losing her balance

more frequently, her pain had increased and she was having difficulty sleeping which caused anxiety.  (D.E. 6-7, Page 58).

On January 25, 2017, Plaintiff was treated at Westside Family Health Center. (D.E. 6-11, Page 27).  Plaintiff was noted as having chronic pain syndrome for which Cymbalta and Tramadol were prescribed as well as diabetes, hypertension, lumbar radiculopathy for which Gabapentin was prescribed, and fatigue.  (D.E. 6-11, Page 27).

A March 20, 2017 brain MRI found Plaintiff's brain mass had no interval change and was "similar in size and appearance" when compared to the previous MRI of the brain on December 12, 2016.  (D.E. 6-15, Page 110).

On March 24, 2017, Plaintiff was treated at Christus Memorial for difficulty breathing with phlegm, a productive cough and muscle aches.  (D.E. 6-10, Page 67).  The chest radiology report showed her lungs were clear and she had no acute cardiopulmonary disease with no significant change from the previous exam on March 22, 2016.  (D.E. 6-10, Page 75).  Plaintiff was treated on March 30, 2017 at Westside Family Health Center for bronchitis and was prescribed a Z-Pack.  (D.E. 6-11, Page 60). Plaintiff reported muscle aches with chronic pain in her legs.  (D.E. 6-11, Page 59). Plaintiff is noted as ambulatory but walking with an assistive device.  (D.E. 6-11, Page 76).

On April 20, 2017, Plaintiff was treated at Corpus Christi Neurology.  (D.E. 6-10, Page 62).  Plaintiff reported she has had lower back and bilateral leg pain for three years and has experienced numbness in both legs.  (D.E. 6-10, Page 62).  Plaintiff is noted as having normal strength in the lower extremities and exhibiting an antalgic gait.  (D.E. 6-

10, Page 62).  Electromyogram (EMG) and nerve conduction studies of Plaintiff's lower extremities were "within normal limits without signs supporting a diagnosis of lumbosacral radiculopathy, plexopathy or significant peripheral neuropathy."  (D.E. 6-10, Pages 63-66).

Plaintiff was treated at Westside Family Health Center on June 7, 2017 for a follow up for diabetes treatment and refills of her medications.  (D.E. 6-11, Page 17). Control of her diabetes with medication is noted as moderate.  (D.E. 6-11, Page 20). Plaintiff reported that pain in her body and in her legs was not relieved with Gabapentin but was with Tramadol.  (D.E. 6-11, Page 20).  Plaintiff was assessed as having diabetes without complications and chronic pain syndrome with pain management as well as neck pain and pain in her lower limbs.  (D.E. 6-11, Page 21).  A July 11, 2017 bilateral leg arterial sonogram found mild to moderate peripheral vascular disease with no evidence of focal stenosis.  (D.E. 6-11, Page 45).

On June 24, 2017, Plaintiff was treated at Christus Spohn for a severe headache. (D.E. 6-15, Pages 58).  After a brain CT, Plaintiff's brain tumor is noted as stable.  (D.E. 6-15, Pages 60 and 107).  Plaintiff was advised to continue treatment with Dr. Alexander. (D.E. 6-15, Page 54).  Plaintiff was also treated at Christus Spohn on July 16, 2017 for a headache with pain traveling down her neck to her right arm.  (D.E. 6-15, Page 74).

On August 10, 2017, Plaintiff was treated at Westside Family Health Center, complaining of bilateral leg pain.  (D.E. 6-11, Page 12).  Plaintiff is noted as ambulatory but walking with an assistive device.  (D.E. 6-11, Page 14).  Plaintiff reported "sitting in car for a long time and walking a lot."  (D.E. 6-11, Page 15).  Plaintiff was assessed as

having peripheral vascular disease, impairment of balance with abnormal gait and mobility, hypertension and obesity.  (D.E. 6-11, Page 16).  Plaintiff was prescribed a handicap placard.  (D.E. 6-11, Page 16).

On September 11, 2017, Plaintiff was treated at Westside Family Health Center, complaining of acid reflux.  (D.E. 6-11, Page 6).  Plaintiff was noted as ambulatory but walking with an assistive device.  (D.E. 6-11, Page 8).  Plaintiff reported have daily, chronic leg pain made worse by activity and walking but she also reported "she gets relief with gabapentin."   (D.E. 6-11, Page 9).   Plaintiff was assessed as having gastroesophageal reflux disease, peripheral vascular disease, diabetes, hypertension and chronic pain syndrome for which she was prescribed medication.  (D.E. 6-11, Page 9). Specifically, Plaintiff's dose of Gabapentin was increased for treatment of her chronic pain, eliminating Tramadol.  (D.E. 6-11, Page 9).

On October 2, 2017, Plaintiff was treated at Christus Spohn for a severe headache. (D.E. 6-15, Pages 48 and 52).  An MRI of Plaintiff's brain tumor is noted as stable from previous images.  (D.E. 6-15, Pages 54 and 104).  Plaintiff was advised to continue treatment with Dr. Alexander.  (D.E. 6-15, Page 54).

Plaintiff was treated at Westside Family Center on October 23, 2017 and November 1, 2017, for hives.  (D.E. 6-11, Pages 79 and 81).  Plaintiff reported joint and back pain, frequent headaches and anxiety about her upcoming disability hearing.  (D.E. 6-11, Page 79).  Plaintiff was prescribed an antibiotic, told to seek dental care for any teeth abnormalities and encouraged to engage in stress management for anxiety.  (D.E. 6-11, Pages 80 and 85).

On December 5, 2017, a brain MRI notes Plaintiff's brain mass was "stable and unchanged in appearance and size when compared with the previous study of 10/2/2017." (D.E. 6-15, Page 101). A radiology report concerning Plaintiff's lower back states Plaintiff had "minimal scoliosis" with "otherwise unremarkable lumbar spine series with no flexion-extension instabilities." (D.E. 6-15, Page 103).

At the January 9, 2018 hearing before the ALJ, Plaintiff testified she stopped working in April or May of 2016 because she kept losing her balance while performing her job duties and she was in pain. (D.E. 6-3, Pages 38-39 and 49). Plaintiff testified she was a high school graduate. (D.E. 6-3, Page 40). Plaintiff further testified she had custody of her 14-year-old grandson and drove five days a week to take him to and from school and to appointments. (D.E. 6-3, Pages 39-40). Plaintiff also testified she lived in a one-story home with hardwood floors which she cleans with her grandson's assistance. (D.E. 6-3, Page 47). Plaintiff also testified her adult sons handled her yardwork. (D.E. 6-3, Page 47). Plaintiff testified she had shoulder reconstruction surgery in 2014. (D.E. 6-3, Page 41). Plaintiff also stated she used a cane, which was not prescribed by a physician, because of her balance issues and her legs hurt when she walked. (D.E. 6-3, Pages 42-43). Plaintiff testified she could walk no more than ten steps without it or she would lose her balance and it would cause pain. (D.E. 6-3, Page 43). As to the mass in her brain diagnosed in 2014, Plaintiff stated it caused numbness on the right side of her face which interfered with her ability to eat and drink as well as a loss of hearing in her right ear. (D.E. 6-3, Page 44). Plaintiff stated she could lift up to five pounds with difficulty because of pain and weakness, could only stand in one place for a short period

of time before having to sit down, could sit for about one minute before she was in pain, could not bend or stoop and had no problem grasping or hold objects .  (D.E. 6-3, Pages 45, 47-48 and 50).

Donna Johnson, a VE, then testified that a 51 year old person with a high school education and past relevant work as a bookkeeper or accounts receivable clerk who could perform light exertional work; occasionally lift and carry 20 pounds; frequently lift and carry 10 pounds; could stand and/or walk for about four hours in an eight-hour workday; could sit for about six hours in an eight-hour workday; could occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds; could occasionally overhead reach; frequently handle, finger, and feel; could not work at unprotected heights or around dangerous moving machinery; could not operate a motor vehicle; could occasionally operate foot controls; could not have concentrated exposure to loud industrial level noise; could occasionally be exposed to bright flashing lights, industrial strength chemical fumes, or industrial level noise; and could not have more than occasionally concentrate exposure to fumes, odors, dust, gas, poor ventilation, humidity, extreme hot or cold temperatures or other pulmonary irritants could perform sedentary work as an accounts payable receivable clerk.  (D.E. 6-3, Pages 53-54).  The VE also testified that such a person could also perform light unskilled work as an office helper, a mailroom clerk non-postal and folder.  (D.E. 6-3, Pages 54-55).  The VE then testified, using the same hypothetical but adding in that a cane is required to ambulate, that such a person could still perform the same sedentary and light jobs listed.  (D.E. 6-3, Page 55).

On August 7, 2018, the ALJ, after thoroughly summarizing Plaintiff's medical records and after consideration of the entire record, found Plaintiff had the RFC to perform her past work as an accounts receivable clerk.  (D.E. 6-3, Pages 11-26).  The ALJ then concluded Plaintiff was not under a disability from the alleged onset date of August 12, 2016 through the date of the decision, August 7, 2018.  (D.E. 6-3, Page 24).

On October 9, 2018, Plaintiff requested review of the ALJ's decision.  (D.E. 6-5, Page 65).  This request was denied on July 23, 2019.  (D.E. 6-3, Page 2).  Plaintiff filed this action on August 16, 2019.  (D.E. 1).

## IV.   STANDARD OF REVIEW

Judicial review of the Commissioner's decision regarding a claimant's entitlement to benefits is limited to two questions: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards.  *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The burden has been described as more than a scintilla, but lower than a preponderance.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  A finding of "no substantial evidence" occurs "only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988) (citations omitted).

In applying the substantial evidence standard, the Court scrutinizes the record to determine whether such evidence is present.  But the Court does not reweigh the evidence, try the issues de novo or substitute its judgment for that of the Commissioner.

*Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citations omitted).   It is incumbent upon the Court to look at the evidence as a whole and take into account the following factors: (1) objective medical evidence or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and others who have observed him and (4) the claimant's age, education and work history.  *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citations omitted).

In evaluating a disability claim, the Commissioner follows a five-step process to determine whether (1) the claimant is presently working; (2) the claimant's ability to work is significantly limited by a physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in the appendix to the regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant cannot presently perform relevant work.  *Martinez v. Chater*, 64 F.3d 172, 173-174 (5th Cir. 1995); 20 C.F.R. § 404.1520.  The claimant bears the burden of proof on the first four steps with the burden shifting to the Commissioner at the fifth step.  *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

## V.   DISCUSSION

The undersigned has thoroughly reviewed the entire record in this case as well as the parties' briefing.  Plaintiff's brief did not assist the undersigned in reviewing this case as it is not well organized, asserts repetitive arguments, and lists a large number of alleged errors often without any sufficient factual or legal analysis.  Therefore, the undersigned will consider the majority of Plaintiff's alleged errors collectively when determining whether substantial evidence supports the ALJ's decision and whether the

decision comports with relevant legal standards rather than addressing each argument on an individual basis.

### A.    Due Process and Procedural Claims

Plaintiff first alleges her due process rights were violated because there was a seven- month period between when the ALJ held the January 9, 2018 hearing and when she issued her August 10, 2018 decision finding Plaintiff was not disabled from the alleged onset date of August 12, 2016 through the date of the decision.  Plaintiff alleges it was an error for the ALJ to not limit her ruling to the date of the hearing rather than the date of the decision.  However, Plaintiff provides no legal support that the ALJ erred by making her finding through the date of the decision.   Further, given the large and fluctuating number of disability applications filed each year and the lengthy review required in each case, it is understandable that ALJs cannot contemporaneously issue opinions the same month, or even the same quarter, as each hearing is held.  Reviewing the statistics provided by the Defendant, the undersigned finds a seven-month period is not unreasonable in this instance.  (D.E. 9, Page 6).  Additionally, Plaintiff has provided no evidence that her medical conditions and resulting limitations substantially changed between the date of the hearing and the date of the decision despite being provided with ample opportunity to submit additional evidence in support of her claim at the hearing itself, to the ALJ after the hearing, to the AC or to this Court.  D.E. 6-3, Pages 33-34 (Plaintiff's counsel certifying at the hearing that the record could be closed); 20 C.F.R. § 404.935 (Claimant may provide additional information or evidence to ALJ no later than 5 days before the hearing or at anytime before decision is issued in certain circumstances);

20 C.F.R. § 404.970(a)(5) (The AC, if good cause is shown, will consider new evidence that relates to the period on or before the date of the hearing decision if it would change the outcome of the decision); and 42 U.S.C. § 405 (g) (This Court may remand the case for further proceedings if there is additional evidence that is new, material and good cause exists for the failure to present the evidence at the administrative level).

Again citing no legal authority, Plaintiff also asserts her due process rights were violated because the AC issued a short, standard opinion denying her appeal rather than specifically addressing the facts of her case.  However, when reviewing the opinion itself, the AC specifically referenced the additional materials submitted for its review, namely Plaintiff's Request for Review and Representative Brief, before finding the reasons provided did not provide a basis for changing the ALJ's decision.  (D.E. 6-3, Pages 2-5). The AC clearly reviewed Plaintiff's case before denying her appeal and there is no authority cited requiring the AC to submit a detailed written opinion in each case it reviews.  Additionally, while Plaintiff argues she was denied the right to present evidence and to state her position at a social security disability hearing, this argument is clearly without any merit as a hearing was held and Plaintiff's present attorney was allowed to argue his client's case, to question both the Plaintiff and the VE and was given the opportunity to submit any additional evidence to both the ALJ, the AC and this Court. (D.E. 8, Page 23).  Lastly, to the extent Plaintiff argues the Defendant's answer is somehow deficient, the undersigned has reviewed the answer and recommends it sufficiently responds to the complaint as Defendant denied the allegations in question and

specifically submitted that a reversal or award of damages was not warranted in this case. (D.E. 5).

Therefore, the undersigned recommends to the Court that all of Plaintiff's due process and procedural claims are without merit.

### B.    RFC

Plaintiff next asserts the ALJ erred when she determined Plaintiff had the RFC to perform a reduced range of light work.  For the reasons stated below, the undersigned finds this assertion is without merit.

An individual claiming disability has the burden of proving disability and must prove the inability to engage in any substantial gainful activity.  *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983) (citations omitted).   "The mere presence of some impairment is not disabling per se.  Plaintiff must show that she was so functionally impaired by her [disability] that she was precluded from engaging in any substantial gainful activity.  *Id*. (citations omitted).  Further, it is the task of the ALJ, not this Court, to weigh the evidence.  *Hames*, 707 F.2d at 165; *Holmes v. Colvin*, 555 Fed. App'x 420, 421 (5th Cir. 2014) (citing *Bowling*, 36 F.3d at 434).  "It is not the place of this Court to reweigh the evidence, or try the issue de novo, or substitute its judgment…[i]f supported by substantial evidence, the Secretary's findings are conclusive and must be affirmed." *Id*.

An RFC is an assessment, based on all the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite impairments. 20 C.F.R. § 404.1545(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).  RFC refers

to the most a claimant is able to do despite physical and mental limitations.  20 C.F.R. § 404.1545(a).  The ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence.  The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record.  *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence...") (citation omitted).

The ALJ thoroughly summarized and analyzed Plaintiff's conditions, including her subjective complaints and the objective medical evidence, which indicated that while Plaintiff was limited by her  severe impairments of stable right cerebellopontine angle mass of the brain, history of right acoustic neuroma, type II diabetes mellitus, mild to moderate peripheral vascular disease and left supraspinatus tear of her shoulder and her non-severe impairments of obesity, hepatic steatosis, small hiatal hernia, minimal scoliosis and mild degenerative changes of the lumbar spine, allergic rhinitis, gastroesophageal reflux disease and essential hypertension, she did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment.  (D.E. 6-3, Pages 13-22).  The ALJ then concluded Plaintiff had the RFC to perform a modified range of light work, specifically that she could: only occasionally lift and carry 20 pounds; frequently lift and carry 10 pounds; stand and/or walk for about 4 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday;

requires a cane to ambulate;[4] can occasionally climb ramps and stairs but never ladders, ropes or scaffolds; could occasionally reach overhead with the bilateral upper extremities; frequently handle, finger, and feel with the bilateral upper extremities; could not work at unprotected heights or around dangerous moving machinery with open conveyors or parts; could occasionally operate foot controls; and could not have concentrated exposure to bright/flashing lights or industrial strength chemical fumes.   (D.E. 6-3, Pages 16-22).

Plaintiff's arguments regarding the ALJ's RFC determination center around whether substantial evidence supports that Plaintiff is capable of walking for 4 hours in an 8-hour workday and sitting for 6.  In support of this argument, Plaintiff points to her continuous, subjective complaints of pain and descriptions of her physical limitations, which the undersigned has reviewed and extensively documented above and which the ALJ thoroughly discussed in her opinion.  (D.E. 15, Pages 15-16).  The ALJ considered this subjective evidence but found the degree of impairment evidenced by the objective medical findings and the treatment record did not impose functional restrictions of disability severity on Plaintiff's activities.  The ALJ referenced treatment notes regarding Plaintiff's numerous ailments which indicated they were stable, well controlled, improving and/or mild to moderate.  (D.E. 6-3, Pages 17-22).  The ALJ correctly noted

---

[4]Plaintiff correctly notes that the ALJ contradicted herself in her opinion regarding Plaintiff's need for a cane.  The ALJ did state in her decision that despite Plaintiff appearing at the hearing with a cane and the record notations of her using a cane to ambulate, she did not provide for the use of a cane in the RFC because the cane was not prescribed to her, there was no acceptable medical source saying she needed to use a cane, and the objective medical evidence, specifically nerve conduction studies of her lower extremities were normal.  (D.E. 6-3, Page 21).  However, the ALJ did provide for the use of a cane in Plaintiff's RFC, finding that claimant "requires a cane to ambulate."  (D.E. 6-3, Pages 17 and 22).  The VE also testified when questioned by the ALJ that Plaintiff's past relevant work as an accounts receivable clerk could be performed with a cane.  (D.E. 6-3, Page 55).  Therefore, while the ALJ did contradict herself, by providing for the use of a cane in the RFC and including the use of a cane in determining what type of work could be performed, the undersigned recommends any error is harmless.

that the objective medical evidence did not support the severity of physical limitations and pain levels reported by the Plaintiff.  Plaintiff received no ongoing treatment for her left shoulder after she was released to work on September 16, 2014 without restrictions and she reported her left shoulder felt good and was about 90% back to normal.  (D.E. 6-15, Page 9).  Plaintiff's brain mass is consistently noted as stable and unchanged.  (D.E. 6-8, Pages 31, 47, 55-56, 57, 58, 59-60, 61-62; D.E. 6-9, Page 65; and D.E. 6-15, Pages 54, 60, 101, 104, and 107).  Her diabetes and hypertension are regularly reported as well controlled and stable with medication.  (D.E. 6-10, Pages 6, 7, 9, 11, 15, 17 and D.E. 6-11, Page 20).  EMG and nerve conduction studies of Plaintiff's lower extremities were "within normal limits without signs supporting a diagnosis of lumbosacral radiculopathy, plexopathy or significant peripheral neuropathy."  (D.E. 6-10, Pages 63-66).  A bilateral arterial sonogram found mild to moderate vascular disease with no evidence of focal stenosis.  (D.E. 6-11, Page 45).  As to Plaintiff's back complaints, lumbar x-rays showed mild disc bulges without central canal stenosis with conservative treatment recommended.  (D.E. 6-8, Page 36).  Further testing showed mild degenerative changes at L5/S1.  (D.E. 6-8, Page 65).  Later scans showed no acute bony abnormality with mild scoliosis and spondylosis of the lumbar spine and mild facet disease at L4/L5 and L5/S1 levels with "no evidence for instability seen."  (D.E. 6-8, Pages 47 and 66).  Further radiology reports regarding Plaintiff's lower back determined Plaintiff had "minimal scoliosis" with "otherwise unremarkable lumbar spine series with no flexion-extension instabilities."  (D.E. 6-15, Page 103).  Surgery was not recommended by her treating physicians for "her relatively mild degenerative disease" and mild degenerative changes

at L5/S1.  (D.E. 6-8, Page 47 and D.E. 6-15, Page 21).  Additionally, the ALJ relied upon

the opinions of non-examining physicians regarding Plaintiff's RFC, who both found

Plaintiff was capable of light work, modified to full range.  (D.E. 6-3, Page 22).[5]  Lastly,

the ALJ also correctly noted that on one occasion on August 10, 2017, Plaintiff reported

"sitting in the car for a long time and walking a lot."  (D.E. 6-11, Page 15).

Notably, other than Plaintiff's own descriptions and testimony, there is no medical

evidence to support Plaintiff's claims that she has any limitations in her ability to sit or

that she is incapable of walking for 4 hours in an 8-hour workday as the objective

medical evidence indicates, at most, mild, stable and controlled ailments.  Further, it is

well settled that an ALJ's credibility findings on a claimant's subjective complaints are

entitled to deference.  *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).

Subjective complaints must be corroborated, at least in part, by objective medical

findings.  *Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988) (citations omitted); *Owens

v. Heckler*, 770 F.2d 1276, 1281-82 (5th Cir. 1985); *Chambliss*, 269 F.3d at 522.  For

pain to rise to the level of disabling, that pain must be "constant, unremitting, and wholly

---

[5]The ALJ gave significant weight to Dr. Leigh McCary's opinion that Plaintiff was capable of a modified range of light work with standing/walking only 4 hours finding it was consistent with the medical evidence.  (D.E. 6-3, Page 22 and D.E. 6-4, Pages 6-8).  However, the ALJ then restricted Plaintiff's RFC even further, limiting her to occasional climbing of ramps and stairs and the use of a cane to ambulate.  (D.E. 6-3, Page 22).  The ALJ also gave partial weight to the opinion of Dr. Scott Spoor who opined Plaintiff could perform a full range of light work with few limitations.  (D.E. 6-3, Page 22 and D.E. 6-4, Pages 20-22).  The ALJ determined partial weight was appropriate because records submitted subsequent to Dr. Spoor's assessment demonstrated greater standing/walking limitations and the use of a cane were supported by the record.  (D.E. 6-3, Page 22).

Plaintiff argues the ALJ erred when considering these non-examining state agency physicians' reports because she did not evaluate their opinions pursuant to the five factors in 20 C.F.R. § 404.1527(c).  (D.E. 8, Pages 16-17).  However, the regulation itself is clear that these factors need only be analyzed when the ALJ is discounting the opinion of a treating physician.  20 C.F.R. § 404.1527(c) ("Unless we give a treating source's medical opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.")  Plaintiff has cited no authority providing otherwise.

unresponsive to therapeutic treatment." *Chambliss*, 269 F.3d at 522. An ALJ may discount subjective complaints of pain as inconsistent with other evidence in the record. *Dunbar v. Barnahrt*, 330 F.3d 670, 672 (5th Cir. 2003) (citing *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991).

Here, the ALJ considered Plaintiff's subjective complaints and testimony regarding her limitations, the objective medical evidence, Plaintiff's daily activities and other pertinent factors and found that while her medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence and limiting effects were not credible and she was capable of perform a modified range of light work. (D.E. 6-3, Pages 16-22). Having reviewed the record and for the reasons stated above, the undersigned recommends that substantial evidence supports the ALJ's RFC determination.

### C.    PAST RELEVANT WORK

In order to determine whether Plaintiff could perform her past relevant work, the ALJ is required to assess the physical demands of that work. *Orphey v. Massanari*, 286 F.3d 1063 (5th Cir. 2001) (citation omitted). This determination may rest on the descriptions of past work as actually performed or as generally performed in the national economy. *Id*. While an ALJ has a duty to make a sufficient inquiry into a claim, it is an applicant's burden to prove an inability to perform former work. *Hollis v. Bowen*, 837 F.2d 1378, 1386 (5th Cir. 1988). Accordingly, for the reasons stated below and considering Plaintiff's burden, the undersigned concludes the ALJ's determination that Plaintiff could perform her past relevant work is supported by substantial evidence.

As Plaintiff's work as an accounts receivable clerk[6] was classified as sedentary,[7] the ALJ concluded Plaintiff was capable of performing her past relevant work, relying on the VE's testimony based on Plaintiff's description of her past job duties.  (D.E. 6-3, Pages 22, 53-54 and 55).  Plaintiff disagrees with this determination, again asserting that the ALJ erred because she cannot sit for 6 hours in an 8-hour workday, which is required for the position.  However, for the reasons stated above, the undersigned recommends substantial evidence supports the ALJ's determination that Plaintiff was capable of both walking and sitting for the required time.  Plaintiff also argues that the use of cane makes her incapable of performing unskilled sedentary work and therefore, she should have been found to be disabled, citing to 20 C.F.R. § 404.1567(a), Social Security Ruling ("SSR") 83-10 and POMS DI 25020.005A.6.  However, none of this authority provides that the use of a cane automatically renders her unable to perform such work.  The first citation is to the code section generally defining the physical exertion requirements of sedentary work, which does not reference the use of any held assistive device.[8]  The second citation is to the SSR 83-10, which also says nothing about the effects of a cane

---

[6]Plaintiff argues the VE used the wrong Dictionary of Occupational Title  ("DOT") Code for her past relevant work. (D.E. 8, Page 14).  Plaintiff asserts, without citing any evidence or authority, that Plaintiff's past relevant work was that of a bookkeeper (clerical), which is also a sedentary position.  Plaintiff's provides no further explanation. Therefore, Plaintiff has failed to provide sufficient information in support of this argument and it should be rejected. Interestingly, when the VE stated at the hearing that Plaintiff's past relevant work was classified as an accounts receivable clerk, Plaintiff's counsel raised no objection.  (D.E. 6-3, Page 53).  Further, the VE testified that the positions of bookkeeper and accounts receivable clerk were "kind of interchangeable."  (D.E. 6-3, Page 53).

[7]Jobs are classified, from most physically limited to least physically limited, as: sedentary, light, medium, heavy and very heavy work.  20 C.F.R. § 404.1567. Therefore, if a plaintiff is capable of performing light work, then that plaintiff is also capable of performing sedentary work.

[8]Specifically, this section provides:  Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

on the ability to perform sedentary work. SSR 83-10, 1983 WL 31251. The last citation

is to the SSA's Program Operations Manual System ("POMS") which specifically states

regarding medically required hand held assistive devices that "[s]ince most unskilled

sedentary work requires only occasional lifting and carrying of light objects such as

ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who

uses a medically required hand-held assistive device in one hand may still have the ability

to perform the minimal lifting and carrying requirements of many sedentary unskilled

occupations          with          the          other          hand."          POMS,

https://secure.ssa.gov/apps10/poms.nsf/lnx/0425015020#b (last visited on May 6, 2020).

POMS also notes that the ALJ may use a vocational resource in these situations, which is

exactly what the ALJ did when soliciting the testimony of the VE, who testified that

using a cane would not prevent Plaintiff from performing her past relevant work. *Id.*;

(D.E. 6-3, Page 55). Therefore, for the reasons stated above, the undersigned

recommends Plaintiff's arguments are without merit.[9]

## VI.   RECOMMENDATION

For the reasons discussed above, the undersigned respectfully recommends the

ALJ considered all of the evidence in the record, both subjective and objective, and

properly assessed Plaintiff's RFC and her ability to perform her past relevant work. As

---

[9]Plaintiff raises additional arguments regarding DOT definitions, Medical Vocational Guidelines and the ALJ's alternative Step 5 about other relevant work Plaintiff could perform. However, as the undersigned recommends the ALJ's decision through Step 4 is supported by substantial evidence meaning that Plaintiff could perform her past relevant work, these arguments are moot as Plaintiff failed to meet her burden through step 4. *Bowling*, 36 F.3d at 435 (The claimant bears the burden of proof on the first four steps with the burden shifting to the Commissioner at the fifth step to prove other work is available which Plaintiff can perform); *Harper v. Sullivan*, 887 F.2d 92, 97 (5th Cir. 1989) (As Plaintiff was found to be able to perform past relevant work, there is no need to apply the guidelines or to solicit VE testimony); *Mays v. Apfel*, 233 F.3d 575 (5th Cir. 2000) (same).

such, it is respectfully recommended that the Commissioner's determination be **AFFIRMED** and Plaintiff's cause of action be **DISMISSED**.

ORDERED this 18th day of May, 2020.

Jason B. Libby
United States Magistrate Judge

<u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(c); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a Magistrate Judge's report and recommendation within **FOURTEEN (14) DAYS** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).